## TOM L. GREEN CONSTRUCTION CO. et al. v. BUSH et al.

No. 22322. Opinion Filed Oct. 6, 1931.

A. J. Follens, Clayton B. Pierce, and A. M. Covington, for petitioners.

Gordon Johnston and James R. Eagleton, for respondents.

McNEILL, J. This is an original action to review an award of the State Industrial Commission in favor of respondent, O. C. Bush, and against the petitioners, rendered on the 8th day of April, 1931. The respondent received an accidental personal injury November 19, 1930, while in the employment of petitioner, Tom L. Green Construction Company.

The employer's first notice of injury was signed on the 26th of November, 1930, and filed before the Commission on the 2nd day of December, 1930. The same is signed by S. O. Lewis. The accident is described as "run splinter under finger nail," and nature and extent of injury is "infected finger." The respondent contends that he received an accidental personal injury to his finger, testicles, and scrotum occasioned through the performance of his duties as a carpenter by slipping upon a girder, straddling the same, and pulling a piece of scaffold down upon and across his loins; that immediately afterwards the pain was so intense that he began vomiting, became ill, and worked no more that day. Three days subsequent, claimant reported his injury to the foreman, and the foreman instructed the respondent to report to the company's doctor, Dr. Payte. The respondent testified that he reported to the doctor and gave him a report of the injury he had received; that the doctor treated his finger, but made no examination of his other injury, and assured the respondent that his testicle injury was only temporary; that the swelling would go down, and for the respondent to keep off his feet. The respondent also testified that he advised the doctor to fill out the necessary report for the Industrial Commission. However, the physician's report received by the Commission on December 8, 1930, dated December 5, 1930, shows that the description of the injury and the extent of the injury is as follows: "got splinter under nail of mid-dle right hand, which became infected," and the treatment described as "pus drained out, wound dressed, hot applications applied." The respondent claimed that he did not know that his other injuries were not reported to the Commission until he was informed of such by the Secretary of the Industrial Commission. The Commission sent respondent to Dr. Moore, who examined him on January 2, 1931, and filed his written report of such examination with the Commission on January 5, 1931. The respondent then filed with the Commission his motion to reopen cause for change in condition, which is as follows:

"Comes now O. C. Bush, claimant in the above cause, and moves the Commission to reopen this cause, on the ground that his condition is changed since the final award made herein, and in support of this motion, gives the Commission to know and be informed that he was injured while in the employ of respondent, on the 19th day of November, 1930, while acting in the course of his employment, and that he received injury to his middle finger on the right hand for which he received compensation for three weeks at $18 per week, and at the same time received an injury to the scrotum and testicles which since said time has increased in severity until claimant can hardly walk without suffering great pain; claimant believes and has been so advised by Dr. Moore, at the request of the Commission, that surgical treatments are necessary.

"Wherefore, claimant moves that this cause be reopened for a further hearing as to his disability."

It is the contention of the petitioners that the injury to the testicles did not arise out of the injury received by respondent on November 19, 1930. The Commission found against the contention of the petitioner, and on the 8th day of April, 1931, made its award which is as follows:

"Now on this 8th day of April, 1931, the State Industrial Commission being regularly in session, this cause comes on for consideration pursuant to a hearing held at Oklahoma City, Okla., on the 13th day of March, 1931, before Commissioner Fred H. Fannin on motion of claimant to reopen cause and award further compensation; at which hearing, claimant appeared in person and by his attorney, Gordon Johnston, the respondent and insurance carrier being represented by A. J. Follens, and the Commission, after reviewing the testimony taken at said hearing, all reports on file, and being otherwise well and sufficiently advised in the premises, finds:

"(1) That on and prior to November 19, 1930, claimant, O. C. Bush, was in the employ of respondent, Green Construction Com-

pany; that while acting in the course of his employment, claimant received injury to his middle finger on the right hand, for which he received compensation for three weeks at $18 per week, and at the same time received an injury to the scrotum and testicles, which since said time has increased in severity; that on January 8, 1931, a motion was filed by claimant to reopen cause for change in condition.

"(2) That the average wage of claimant at the time of the injury was $5.60.

"The Commission is of the opinion: By reason of aforesaid facts that claimant is entitled to compensation from January 8, 1931, the date motion was filed, to March 13, 1931, the date of the hearing, which is 9 weeks and 1 day, at the rate of $18 per week, making a total of $165, and any compensation remaining due to this date, and continued thereafter until otherwise ordered by the Commission, and also pay such reasonable medical expense as has been incurred by claimant and pay other and further medical and surgical treatment until otherwise ordered by the Commission.

"It is therefore ordered, that within 15 days from this date, respondent, Green Construction Company, or its insurance carrier, Southern Surety Company, pay claimant the sum of $165, being compensation at the rate of $18 per week, computed from January 8, 1931, to March 13, 1931, which is 9 weeks and 1 day pay any compensation remaining due from March 13, 1931, to date, and continuing thereafter weekly at the rate of $18 per week until otherwise ordered by the Commission, pay such reasonable medical expense as has been incurred by claimant and also pay for other and further medical and surgical treatment until otherwise ordered by the Commission. * * *"

It is agreed by respondent and petitioners that the respondent cannot recover the award made to him by the Commission unless the same is based upon a change in condition after the final award. Respondent contends that the evidence clearly establishes a change in condition after the final award of the Commission. Petitioners contend to the contrary. An examination of the evidence of respondent, in part, is as follows:

"Q. About a month after you were discharged by Dr. Payte the swelling remained about the same? A. Yes, it gradually went down after a month. It went down and then it just kept about its normal size. * * * Q. And you said that the swelling had disappeared since about a month after Dr. Payte discharged you? A. No, sir. Q. That is not correct? A. No, sir, I said the latter part it was swollen about a month, about the same, and it gradually went out. Q. When did it disappear? A. I suppose about six weeks after he dismissed me, or something

like that. * * * Q. What did the doctor say about the testicle injury? A. At first he said it was just a bruise and I would have to go home and keep off my feet, and use hot cloths, and up until the latter part when he was doctoring me, he said I would have to be operated on, but he didn't think the insurance company would stand for the operation. Q. Did he say the swelling would go away? A. He said in time it would go away. * * *"

Dr. Moore, who testified in behalf of respondent, stated that he made his first examination on January 2, 1931. The Commission approved the settlement entered into between respondent and petitioner pursuant to stipulation and receipt on December 30, 1930, in reference to the temporary total disability to respondent's finger at the rate of $18 per week for a period of three weeks. Dr. Moore also examined the respondent on the date of the hearing before the Commission, on March 13, 1931. He testified as follows:

"Q. Did you ever have occasion to examine one by the name of O. C. Bush? A. Yes, sir. Q. When was that first examination, Doctor? A. About the first of January, I believe it was, or the last of December. Q. What was his condition at that time as you found it? A. I have my examination written out, if I may read that and it will give everything in detail. By the Court: All right, it is admissible. A. January 3, 1931, Oklahoma City, Okla. This is in answer to Chester Napps', Secretary of the State Industrial Commission, request on the examination of O. C. Bush, and the following are my findings:

" 'White man, age about 50 years, walked into my office 1/2/31, complaining of marked swelling and pain in right scrotum and right lower quadrant. He says he received a traumatic injury from a heavy plank while sitting astride a steel girder, thereby sustaining the injury between the two objects. Date of this injury was about two months ago.

" 'Examination: The right scrotum is considerably enlarged from the inguinal ring down the course of the sheath containing the vessels and cord and the entire epididymis and testicle. There is no fluctuating mass present but considerable pain on slight palpation. The mass does not transmit light. Examination per rectum was difficult because of pain produced by pressure on hemorrhoids, but I was able to outline fairly large prostate with some irregularity in outline and a marked swelling of the seminal vesticles on the affected side. There were no scars or sore on the penis and no discharge present.

" 'Impression: This case is suffering with a subacute and epididymitis and orchitis. There is also a chronic condition of the prostate of seminal vesticle.

"Treatment: The treatment in this case is surgical and my reasons for this are two-

fold. First, it is in the procedure of choice in assisting the man to make a complete recovery. Second, all palliative measures have thus failed and are more or less a failure in the workingman who does lifting and manual labor. I thank you for referring this case to me.

"Q. That is when he first came to you? A. Yes, sir. Have you examined him since? A. I saw him this morning. Q. This morning was the first time you made a thorough examination since then? A. Yes, I made a local examination this morning, but not a general. Q. What did you find his condition this morning? A. He walked into my office this morning after some months of rest. The outward appearances are these: The scrotum was evidently bruised and the right side has become atrophied or smaller. The tissues are grown together underneath the lower end of the testicle and a great deal of fullness there from the inguinal ring down the course of the sheath. There was no inguinal adenitis present. I found the rectum quite tender, but not so much as at the preceding examination; it is considerably smaller and it is still quite tender, but not so nodula; the vessels are not palpable now. Q. Doctor, when he first came to you, was the scrotum bruised, or the testicles? A. The right testicle, or right half of the scrotum was involved. There was a light orange color in that side. Q. Could the condition he had the first time he came to you have been caused by the fall, as described? A. There are two causes—I will answer, yes. Q. Would you say his present condition is such that he could pursue the labors which he had been pursuing as carpenter? A. He could attempt it. I advised in my report to the Commission, these cases are dangerous; they have a condition that is going to flare up again, and it is my experience in Oklahoma City and other cities, that it is better to drain them up and let them go back to work. Workingmen subject these to certain pains and strains and treatments. Q. Then, in your opinion it would be dangerous to work without surgical treatment? A. I find these cases recur if they are not taken care of properly at the beginning. Q. What treatment would you prescribe? A. I think that gas should be given and see the condition of the testicle, and it might be necessary to remove that organ; it might be a malignant case of cancer, and I would favor the open operation. Q. I understand you to say there was a shortening of the testicle? A. It has diminished as compared with its mate on the opposite side. Q. Is it below normal? A. Yes, it is below normal. Q. Would you think you could improve his condition by such treatment? A. His condition after the operation would allow him to go to work."

The stipulation and receipt signed by the parties filed on December 30, 1930, shows that the injury to the middle finger, right hand, occurred November 19, 1930, and disability ended December 19, 1930. It also shows that the employee quit work on November 19, 1930, and returned to work on December 20, 1930; also that total hospital and medical expenses were incomplete. Dr. Payte's report filed with the Commission shows the following:

"Is there evidence of syphilis? No. Tubercular infection? No.

"Alcholism? No. Any infectious disease? No.

"Occupational disease? No. Neurasthenia? No.

"Hypochondriasis? No. Hysteria? No.

"Exaggeration? No. Is there evidence of malingering? No."

It also shows that respondent received five separate treatments after he was discharged by Dr. Payte as able to return to his work on December 19, 1930. These treatments are as follows: December 23, 24, 25, 28, and 29.

Dr. Moore examined the respondent on January 2, 1931, being a few days prior to the approved settlement in reference to respondent's finger, made on January 5, 1931, and reduced his examination to writing which he read into the record, and made another examination just prior to the last hearing. His examination shows that the condition of plaintiff's injury to his testicle has changed, and this evidence shows a gradual change in condition from the 2nd of January, 1931, to the date of hearing, which was March 13, 1931. At the time of the approved settlement on January 5, 1931, in reference to the finger of respondent, the respondent had been discharged by Dr. Payte as capable of continuing in his work. At the time of the hearing on March 13, 1931, the respondent testified that he was not able to work.

Dr. Moore testified on the day of the hearing that the patient should have surgical attention; that due to the failure of the organ being properly drained the extra fluid condition had changed into a fibrous exudate scar tissue which produced drawing of the organs causing adhesions to form; that this condition continued to grow worse. There is evidence that this injury to the testicle grew out of the original injury and that the condition of this organ gradually changed in the manner as indicated by Dr. Moore's testimony. If this injury was received by respondent at the time he received the injury to his finger and the condition is as testified to by Dr. Moore, there is evidence to support

the contention of respondent in reference to a change in condition. The fact that the testicle decreased in size does not mean that the condition of this organ grew or became better. The brief of respondent shows, though not covered in the evidence, that since the hearing the testicle has since been removed by surgical operation. This fact, however, we are not considering in determining whether or not the evidence supports the finding of the Commission on the change of condition.

Counsel for petitioners also urge that no notice of the injury to the scrotum and testicle was given petitioners within the 30-day period as required under section 7292, C. O. S. 1921, and such failure to give such notice was not excused by the Commission, and that they were prejudiced thereby.

The respondent testified, in part, as follows:

"A. I was moving a scaffolding and standing astride of a steel girder and pulling the plank over, and the end fell off, and it threw me straddle of this steel girder and bruised me—bruised my testicles, and hurt my hip joint some. Q. Did you also receive an injury to the finger? A. Yes, the plank got away from me and I clinched this plank so I run a splinter in my finger. Q. Immediately after your fall, did you become sick? A. Yes, sir, and I went to the ground as soon as possible. Q. Did you have any vomiting spells, or any sickness of that kind? A. Yes, sir, I threw up some; it made me awful sick. Q. Who did you report the injury to? A. Well, I reported my injury to the foreman, and that was on Monday. I reported it again, and I told him I would have to see the doctor, and he told me to go to the company doctor. Q. At this time were you in any pain, caused from this injury? A. Yes, sir. Q. Just what was your physical condition the morning after the injury? A. I was swollen up some. Q. Where? A. My testicle was black and blue. Q. And was there any injury to your finger at that time? A. Yes, sir. The splinter in my finger hurt. I thought I got that out that night it was swollen up and a little splinter was left in it. Q. You say you went to the company doctor? A. Yes, sir. Q. Who was that? A. Payte. Q. Dr. Payte? A. Yes, sir. Q. Where are his offices? A. In the Medical Arts Building. Q. Did you tell him what was wrong with you and explain the injury? A. Yes, sir. Q. Did he give you any treatment for the injury? A. He doctored my finger. Q. Did he do anything to the testicle injury? A. No, he didn't, he never even examined me. He went away and was gone about a week and when he came back here I asked him if he made the necessary report of this injury. Q. Did he say he would make your report to the Commission? A. Yes, sir. Q. In what manner did he treat you? A. He told me to apply hot cloths to my injuries down there and he gave me some powders to put in this water to saturate my cloths. Q. And did he tell you he made out your report to the Commission? A. Yes, sir. * * * Q. What did he do about your testicle injury? A. He said when he got back off his visit, he would examine me, and said 'it is just a little bruise, and you will have to go home and put these hot cloths on there and it will be all right in time.' Q. Did he examine the testicle injury on the first visit? A. No, sir. Q. When was the first time that he looked at that injury? A. About a week after my first visit to him. He was gone off on a visit and I never saw him. Q. Do you remember the date? A. No, it was about a week from the 24th. Q. To refresh your memory, I will ask you if it wasn't around the 12th of July, 1930? A. He did treat me then and gave me some tablets. Q. You did tell him about both injuries? A. Yes. Q. And he said he would make out report and send it in? A. Yes, sir. * * *"

This testimony shows that respondent reported his injury to the foreman within a few days following the injury and he reported to him again that it would be necessary for him to see a doctor, and he was advised by the foreman to go to the company doctor. The respondent testified that he reported his injury to the doctor; that the doctor was preparing to be gone for about a week; that the doctor reported to him that he would make the necessary report to the Commission. However, Dr. Payte testified that respondent did not advise him in reference to the condition of his testicle until the 16th, 17th, or 18th of December, 1930. From Dr. Payte's testimony, the company's doctor, on whom the company relied on these matters, Dr. Payte received notice of this injury to respondent's testicle within 30 days from the date of his injury. Respondent also testified that Dr. Payte gave him some medicine. Dr. Payte corroborates this fact and advised an operation, but refused to perform the same unless respondent would bear the expense, because he was of the opinion that this injury was due to pre-existing conditions and did not arise out of the original injury. The petitioner, Tom L. Green Construction Company, did not see fit to call its foreman to refute the testimony of respondent in reference to the notice that he gave to him concerning his injury to his testicle, or to show in any way in what manner petitioners were prejudiced.

In the case of the Oklahoma Gas & Electric Company v. Thomas, 115 Okla. 67, 241 P. 820, this court held:

"In an action to enforce compensation for an injury to an employee under the Workmen's Compensation Act where it appears that no written notice of the injury was given, as required by section 7292, C. O. S. 1921, a want of prejudice to the employer by reason of a failure to give the written notice sufficiently appears where it is shown that the employer had actual notice of such injury soon after it occurred, and, with full knowledge of the injury, omitted to administer any relief; and where the employee makes proof of such actual notice of his injury, the burden of proof then shifts to the employer to show that in spite of such actual notice he is still prejudiced by the failure to give the written notice."

The question of change in condition and whether or not petitioners were prejudiced in the failure to give the written notice as provided by section 7292, C. O. S. 1921, were questions of fact for the determination of the Commission, and this court has often announced the rule that it will not weigh the evidence upon which findings of fact are based, provided there is some competent evidence reasonably tending to support the same.

We are of the opinion, in the absence of any evidence attempted to be offered on behalf of petitioners showing wherein they were prejudiced by the failure of respondent to give the aforesaid written notice, that the Commission by rendering its award properly excused the respondent from giving the written notice provided for by section 7292, C. O. S. 1921.

Finding no reversible error, the award is hereby affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. CULLISON, J., absent.